Staples, J.,
delivered the opinion of the court.
The City of Portsmouth was incorporated by an act of the legislature passed March 1, 1858. Another act, supplementary to the first, was passed 25th March, to provide for the disposition of the common property of the County of Norfolk and the City of Portsmouth. Subsequent to the passage of these aets, and the acceptance of the act of incorporation by the City of Portsmouth, a controversy arose between that city and the County of Norfolk, involving many troublesome questions as well as a large amount of property and money. Suits were instituted both at law and in equity, which promised to be very protracted and expensive. Whilst they were pending, the parties agreed to refer all their matters of controversy to arbitration, and Richard II. Baker, of Norfolk - city, ail'd 'John R. Kilby, of- Nansemohd county, *731 were chosen as the arbitrators. And it was mutually agreed that their award should be entered of record in the circuit court of Norfolk count}7 aud the hustings court of Portsmouth. The arbitrators completed their award on the 29th of June, 1877, after a long and patient investigation of all the matters submitted to them.
The City of Portsmouth, not being satisfied with the decision, refused to abide by it. Thereupon a rule was issued against the city, at the instance of Norfolk County, to show cause why the award should not be entered up as the judgment of the circuit court. The City of Portsmouth appeared in answer to the rule, and objected to the award on numerous grounds; all of which were overruled by the court, and judgment was entered in conformity with the finding of the arbitrators.
The case is now before this court upon a writ of error to that judgment. No complaint is made of any misconduct on the part of the arbitrators. The sole grounds of objection consist of certain alleged errors of law and fact in the award—errors not apparent on the face of the award, but as plainly appearing by the report of the arbitrators and certain exhibits accompanying it, which, it is insisted, must be considered as a part of the-award. On the other hand, it is claimed that these papers constitute no part of the award, and cannot be looked to for any purpose. In the view we take of the case, it is not deemed necessary to decide which of these pretensions is correct. For all the purposes of this decision, it may be conceded that the report and exhibits are a part of the award. With this concession we are to enquire whether the award can be invalidated on all or any of the grounds stated hy the appellant.
It is impossible to look through this record without being struck with the number and variety of difficult questions submitted to the arbitrators; questions relating to the indebtedness of the County of Norfolk, *732 and the amount properly chargeable to the City of Portsmouth; questions relating to the Norfolk county ferries, to the docks in that county and in the city of Portsmouth, and the receipts and profits derived from these several sources for many years;- questions relating to the proper disposition and division of other real and personal property, and numerous other matters of controversy not necessary-to be mentioned here;-. If ever there was. a controversy peculiarly proper for arbitration it was this. The real parties litigant were the people of Norfolk county on one side and the people of Portsmouth on the other—citizens of the same community, bound together by the ties of blood and affection. A proper understanding and settlement of the numerous points-of controversy required not only patient investigation and research, knowledge of local affairs and history, and repeated references to documents and records, but constant intercourse with witnesses and counsel. The' persons selected as arbitrators were peculiarly fitted for the task; they were men -of high standing, personally and professionally, and from their education, association and general information might fairly be presumed to be better qualified to arrive at coi’rect conclusions than any judicial tribunal in the state. It was, therefore, very properly agreed that all suits pending in the circuit and hustings court, and that all* other matters and questions in dispute, together with all other matters which either party might prefer,should be submitted to and finally decided by the-arbitrators; and,.further, that the parties would waive-all technical pleas which would interfere in any manner with the award of the ai’bitrators, except upon the very right and justice of the case as to all matters and questions in controversy. These- considerations all serve .to show that the decision of-the arbitrators- *733 was not to be according to strict technical rules of law, but agreeable to the principles of justice and equity, and that the decision was to be final and conclusive upon the parties.
It is said, however, that as the arbitrators have set forth the grounds of their award in the report accompanying it, they must have intended to submit their conclusions as a matter of law to the court; and where that is the case, the court will reverse their action and set aside the award, if not according to law. The report is, however, not addressed to the court, but to the parties, and obviously was intended for them exclusively, that they might see the grounds of the award. The arbitrators very properly say, in announcing the conclusions to which they have come, it would seem to be proper that they should state briefly the reasons which led them to these conclusions. There is nothing in the report, or in the award, from which it can be inferred that the arbitrators designed to refer any matter to the court, or'that they intended to decide according to the strict technical rules of law. On the contrary, it is manifest throughout their purpose was to base their decision upon an equitable construction of the act of the legislature, and to settle the matters' in controversy upon the very right and justice of the case.
But, conceding that they intended to decide according to law, and that they have not done so in every instance, it does not, therefore, follow that the award is invalid. The court does not set aside an award merely because it may differ with an arbitrator as to the law of the case. In Underhill v. Van Cortlandt, 2 John. Ch. R. 339-361, Chancellor Kent very justly said: “If every award must be made conformable to what would have been the judgment of this cohrt in the case, it would render arbitration useless and vexatious, and a source of great litigation; for it very rarely happens that both parties are satisfied.
*734 The decision hy arbitration is the decision of a tribunal of the parties’ own choice and election. It is a popular, - cheap; convenient and domestic mode of trial, which the courts have always regarded with indulgence.”
In Bassetts adm'r v. Cunningham, 9 Gratt. 684, this court lays marked stress on the fact that the arbitrators were the counsel of the parties, and the umpire a learned and distinguished member of the legal profession. And Judge Allen quotes, -with approbation, what Lord Ellmborough said in Sharsman v. Bell et al., 5 Maule & Sel. 504: “ Where the merits in law and in fact are referred to an arbitrator of competent knowledge, as we must presume a gentleman of the bar to be, and there is not any question reserved by him, the court will not open the award unless something can be alleged amounting to a perverse misconstruction of the law, or misconduct on the part of the arbitrator.” The doctrine laid down in most of the cases is, that if the arbitrators refer any matter to judicial enquiry by spreading it on the' face of their award, or if they nfean to decide according to law, and they mistake the law’ in a palpable material point, the award will beset aside. But their decision upon a doubtful point of law, or in a case where the question of law is designedly left to their judgment, will generally be held conclusive. 2 Story’s Eq. Juris. § 1455, and cases cited in note. It must appear they grossly mistook the •law, and the court will not interfere merely because it would have given a different decision in the pnrti■cular case. Smith v. Smith, 4 Rand. 95; Herrich v. Blaine, 1 John. Ch. R. 101; Moore v. Luckess' next of kin, 23 Gratt. 160.
In the light of these well-settled principles it can scarcely be supposed that this court will enter into a critical examination of the alleged errors in the cause *735 before us, as in the case of an appeal from the decree of an inferior court.
In a decision involving so many interesting and novel. points, it is not difficult for ingenious and able counsel to suggest mistakes, both of law aud fact, in respect to which this court possibly might have come to a different conclusion from that reached by the arbitrators. We have, however, none of the evidence before us upon which their award is based, except what is incidentally embodied in the report in explanation of the conclusions reached.
After a careful examination of the record, we are not prepared to say that the arbitrators have committed any very material or palpable errors in the various points decided by them. It is impossible in this opinion even to advert to all of them. Two or three may be mentioned. For example, complaint is made that the City of Portsmouth is charged, with $1,200—one-half the salary' of the treasurer of Norfolk County from 1858 to 1859—and this is alleged to be a plain and palpable error. The propriety of this charge was discussed by counsel before the arbitrators, and the latter, in their report, give their reasons for allowing it.
Under the act of 1858, already cited, the proceeds of the “Norfolk county ferries” were directed to be paid to the “treasurer of Norfolk county,” and by him to be disbursed in the manner prescribed in the act; and for the faithful discharge of these duties he was made responsible under his official bond. The arbitrators decided that for his services in receiving and disbursing this fund the treasurer was entitled to his compensation, to be paid out of the fund itself, as any other agent or fiduciary; and inasmuch as the City of Portsmoufh and Norfolk County were equally entitled under the law to the proceeds of the ferries, they should bear equally the expense of compensating the treasurer. We are un *736 able to see'anything wrong and unjust in this. On the contrary, the decision seems to be eminently just and . proper. It is true that the arbitrators allowed the treasurer his salary during the years 1862, 1863, 1864 and 1865, when the ferries were under the control of the Federal authorities.
It does not appear that this point was raised in the progress of investigation before the arbitrators. The ground taken by the City of Portsmouth was that the city ought not to be charged with any part of the salary, but that Norfolk County ought to pay the whole of it. Whether the treasurer was entitled to his salary during the years mentioned depended upon the evidence before the arbitrators. It is easy to imagine good and satisfactory reasons for the allowance. As the evidence upon this point is not before us, it is impossible to say there was any error in this particular.
Complaint, is also made of the manner in which the ' accounts of the ferry funds were taken by the arbitrators. It is said that the receipts and disbursements were, aggregated from 1858 to 1869, whereas the accounts ought to have been annually stated as required by the act of 1858, and interest allowed the City of Portsmouth upon the balances found due. In the first place, there is nothing in the act of 1858 prescribing the mode in which the accounts shall be stated. No good could result from annual statements and annual balances, unless it appeared the parties- were entitled to interest thereon. Whether either of them was so entitled depended upon the evidence before the arbitrators, which is not in the record. They, doubtless, had gbod reasons for disallowing it. It may be that 'the funds remained unproductive in the treasury, or that the arbitrators were satisfied that the case was not one for the application of a rigid rule between the *737 city and county. If this were a commissioner’s account this court could not correct it for an alleged error, with respect to interest, unless the evidence was before it; Surely an award should be viewed with equal favor and respect. As a matter of fact, however, the City of Portsmouth was credited with a considerable sum for the loss of interest arising out of the failure to apply the balances due her in the years 1858, 1859, and 1861 to the outstanding indebtedness.
Complaint is also made of that portion of the award relating to the county docks. The arbitrators decided that the title to the land, or the land covered by water, comprehended by the designation of “ the county dock of Norfolk” as contradistinguished from the “ferry franchise,” was and is in the county of Norfolk; but that this title or ownership in fee is subject to the joint right of the county and city to the ferry landing and right of way over the soil or land, and that the rights and interests of the city in the landing as now used, or as it may be hereafter used, are commensurate and coequal with those of the county. This decision is said to be palpably erroneous, because under the act of 1858 Portsmouth is entitled to one-half the fee in the soil. The act provides that all real estate accumulated by said county during the union of said city and county shall belong jointly and equally to said county and city. The arbitrators, in construing this provision, were of the opinion it referred oidy to such property as was acquired after Portsmouth became a town, in 1752, by act of the colonial legislature, and not to property belonging to the county of Norfolk before that time; and as the property in'question was acquired by the county prior to 1752, it did not come within the purview of the act of the legislature. We are not prepared to say this is not a proper construction of the act. Certainly it is an equitable interpreta *738 tion; for the Oitv of Portsmouth could have no just claim to property which belonged to the County of Norfolk long . before the city was in existence. At all events, it cannot be said that the meaning of the legislature is free from all doubt or difficulty. It was a fair subject for arbitration ; it was decided by judges of the parties’ own selection, and they must be held to be bound by that decision.
These three alleged errors in the award have been selected out of many others, because they are said to be the most palpable and injui’ious. Others might be taken up and considered in this same connection, but their examination would fail to show any such errors as would warrant this court in setting aside the award. If it is our duty to go over the whole ground and reverse wherever we think there is error in the award, it is obvious the parties might just as well have left their difficulties to be settled by the courts without the expense and trouble of an arbitration. On entering into the submission they well knew that questions of great difficulty would be passed upon by the arbitrator’s; that valuable interests in real and personal property would be adjudicated, and large amounts of money decreed. The submission was made with direct reference to these matters. If the City of Portsmouth has been made the sufferer, it is the result of her own deliberate action, and the courts have no power to interfere.
Upon the whole case, we are of opinion the circuit court did not err in refusing to disturb the award, and its judgment must be affirmed.
Judgment aeeirmed.